## VAN STRAATEN ET AL. v. THE PEOPLE.

1. CRIMINAL LAW—EVIDENCE—POSSESSION OF STOLEN PROPERTY.
In the absence of direct proof of the taking, the possession of stolen property is a circumstance from which the jury may infer that the accused committed the theft, but to authorize a conviction upon such circumstance, the possession must be personal and exclusive, recent and unexplained, and must involve a distinct and conscious assertion of property by the defendant.

2. SAME.
Where the evidence shows that stolen property was found in a room accessible to others than the defendants, that defendants were there only as employees of a company, and that the property was placed there by others than defendants, there was no ground on which to base a presumption that defendants had any complicity in the theft.

3. SAME—INSTRUCTIONS.
The presumption of guilt arising from the possession of recently stolen property is a presumption of fact and not of law, and the weight to be given it as a criminating circumstance rests entirely with the jury. An instruction to the effect that the recent possession of stolen property is, in law, a strong criminating circumstance, is erroneous.

4. SAME—INSTRUCTIONS—BURDEN OF PROOF.
In a prosecution for larceny where defendants were found in possession of recently stolen property, an instruction that placed upon the defendants the burden of satisfying the jury that they came into the possession honestly, was erroneous. If the explanation creates a reasonable doubt in the minds of the jury, it is sufficient to rebut the presumption of guilt.

*Error to the District Court of El Paso County.*

Mr. I. N. STEVENS, Mr. J. REID CROWELL and Mr. F. W. LIENAU, for plaintiff in error.

The Attorney General and Mr. CALVIN E. REED, for the people.

MR. JUSTICE GODDARD.delivered the opinion of the court.

The plaintiffs in error were tried and convicted in the dis-

trict court of El Paso county, for the larceny of two copper plates, of the value of $700, the property of the Gold Crater Mining Company, and sentenced to the penitentiary, at hard labor, for the term of three years.   To reverse this error they bring the case here on error.

The testimony introduced on the part of the people is to the effect that the copper plates in question were, during the night of October 31, 1896, taken from what is known as the Summit mill, and were found on the forenoon of November 1. in the ore room of the Gavin smelter in Cripple Creek, covered with from a foot to eighteen inches of ore; that plaintiffs in error were employees of the Gavin smelter, and at the time were engaged in sampling ore in the room where the plates were found.   There is no testimony directly connecting them with the actual taking of the plates from the Summit mill.   The only testimony as to how the plates came there is that of John D. Baumann, who was vice president and general manager of the Gavin smelter, who testified that he was buying copper of any description that came along; that he was at the Branch Saturday night paying off the men who had been working at the smelter; that two parties came to him and wanted to know if he would buy a lot of copper; he said, "Yes;" they asked what he was paying for it, and he said, "five cents a pound;" they said, "all right, when can we bring it?" he said, "any time;" that a little later he saw Brentlinger, who acted as foreman when he was not around, and said to Brentlinger: "Should some fellows bring some old copper, weigh it up, and let me know how much it is, and I will give them an order for the money."   Mr. Brentlinger testified that he first saw the plates on the morning of November 1, between 6:30 and 7 o'clock; that they were in front of the smelter on the platform; there were two men with them who spoke to him and said, "Here is that copper;" that he opened the door and told them to throw it in, and they threw it in the back part of the smelter, by the furnace. This testimony is undisputed.

The only circumstance disclosed by the testimony that could

tend in any way to criminate the plaintiffs in error was the alleged possession by them of the stolen property. While, in the absence of direct proof of the taking, the possession of stolen property is a circumstance from which the jury may infer that the accused committed the theft, yet in order to give to this circumstance an evidentiary force sufficient to sustain a conviction, the possession must be personal and exclusive, recent and unexplained; and must involve a distinct and conscious assertion of property by the defendant. Wharton on Criminal Ev. sec. 758, and cases cited. The rule as to the character of the possession is stated by Mr. Greenleaf as follows:

"But to raise the presumption of guilt from the possession of the fruits of the instruments of crime by the prisoner, it is necessary that they be found in his *exclusive possession*. A constructive possession, like constructive notice or knowledge, though sufficient to create a *civil* liability, is not sufficient to hold the party responsible to a *criminal* charge. He can only be required to account for the possession of things which he actually and knowingly possessed; as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key. If they are found upon premises owned or occupied as well by others as himself, or in a place to which others have equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone." 3 Greenleaf on Ev. sec. 33.

It is manifest that the evidence in this case fails to establish the essential element of personal or exclusive possession by the plaintiffs in error of the property in question. The room was open and accessible to others; and, as the undisputed testimony shows, the plates were placed there by others than the plaintiffs in error, who, it is also shown, were there only as employees engaged in the service of the company; and in no sense or proper signification of the word, were in the possession or control of the stolen property. In these circumstances, there was no ground on which to base the pre-

sumption that the plaintiffs in error had any complicity in the theft.  We think it is obvious that their conviction resulted from the misdirection of the court as to the law upon this subject.  Upon this question the court instructed the jury as follows :

" The court instructs the jury that the possession of stolen property recently after the theft, in law, is a strong criminating circumstance, tending to show that the persons in whose possession it was found were guilty of stealing the same, unless they have satisfied you from the evidence here, or unless the facts and circumstances proven upon the trial satisfy you that the defendants came into the possession of the property honestly.  So, in this case, if the jury believe from the evidence, beyond a reasonable doubt, that, the property in controversy here, or any thereof, was stolen from the possession of the alleged owner thereof, and that recently thereafter the same, or any thereof, were or was found in the exclusive possession of the defendants, then this, in law, would be a circumstance tending strongly to show that the defendant stole such property, unless the testimony or the facts and circumstances established upon the trial show that they came into the possession of the same honestly."

This instruction was clearly erroneous in two particulars. The presumption of guilt arising from the possession of the property recently stolen, is a presumption of fact, and not of law.  The weight or force to be given to it as a criminating circumstance rests entirely with the jury.  In the well considered case of *State v. Hodge*, 50 N. H. 510, the law on this subject is thus stated :

"It is a presumption established by no legal rule, ascertained by no legal test, defined by no legal terms, measured by no legal standard, bounded by no legal limits.  It has none of the characteristics of the law. * * * Being a presumption of fact, it should according to our practice, be drawn by the jury, and not by the court."  *Graves v. State*, 12 Wis. 591 ; *Ayres v. State*, 21 Texas App. 399 ; *Stokes v. State*, 58 Miss.

677; *Smith v. State*, 58 Ind. 340; *State v. Hale*, 12 Ore. 352; *Perry v. State*, 41 Texas, 483.

It being, therefore, a mere inference of fact, the court erred in instructing the jury that the recent possession of the stolen property was, in law, a strong criminating circumstance; thereby giving the jury to understand that the guilt of the accused is a presumption which the law requires shall be made from the fact of his being found in possession of the stolen property, instead of an inference or conclusion of their own, which they may or may not adduce from that fact, in connection with the other facts and circumstances of the case. It is also erroneous in imposing upon plaintiffs in error the burden of satisfying the jury that they came into possession of the property honestly. The law imposes no such burden upon a defendant in a criminal case. If the possession of the property by plaintiffs in error had been of such a character as, unexplained, would have constituted a criminating circumstance, it would not have devolved upon them to show, even by a preponderance of testimony, that they came by it honestly. If their explanation created a reasonable doubt in the minds of the jury as to that fact, it would be sufficient to rebut the presumption of guilt. *Boykin v. People*, 22 Colo. 496; *Babcock v. People*, 13 Colo. 515; *Brooke v. People*, 23 Colo. 375.

In *Brooke v. People*, *supra*, a case relied on as supporting an instruction of this kind, the court recognizes the foregoing rule. It is there said:

"The point made by the defendant, viz, that if by any testimony, whether that introduced in his own behalf or by the prosecution, he succeeds in raising in the minds of the jury a reasonable doubt as to any essential element in the case, including the element of possession of stolen property, they should find him not guilty, is good; and if, in its charge, the court violated this rule, it would be our duty to set aside a verdict and sentence to which such an instruction contributed."

While the court held that the instruction there under con-

sideration, as amended and qualified (after being excepted to by defendant), when considered in connection with the other instructions, did not violate this rule, yet from an examination of the opinion in that case, it will be readily seen that the two instructions are materially different, and the reasons assigned for upholding that instruction do not apply to the one before us.   Other errors are assigned, but it is unnecessary to notice them, since for the reasons already given, the judgment must be reversed and the cause remanded.

*Reversed.*