UNITED STATES of America, Appellee,

v.

Thomas Robert WILSON, Appellant.

No. 75–1166.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Oct. 14, 1975.

Rehearing Denied Nov. 13, 1975.

William J. Riedmann, Omaha, Neb., for appellant.

Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before MATTHES, Senior Circuit Judge, and HEANEY and STEPHEN-SON, Circuit Judges.

MATTHES, Senior Circuit Judge.

Count I of a three-count indictment charged that appellant, Thomas Robert Wilson, transported and caused to be transported in interstate commerce from Arizona to Omaha, Nebraska, jewelry of a value of more than $5,000, knowing the same to have been stolen in violation of 18 U.S.C. § 2314. Count II charged that on October 21, 1974, appellant did conceal, store, barter, sell, and dispose of jewelry of a value of more than $5,000 which was moving, was a part of, and constituted interstate commerce from Arizona to Nebraska, knowing the same to have been stolen.[1]

A jury found appellant guilty of Counts I and II. From the judgment of conviction entered on the verdict, appellant has brought this appeal.

I

The principal question presented by this appeal is whether the evidence was sufficient to prove guilty knowledge. In challenging the conviction, appellant contends, (1) that the Government failed to offer evidence from which the jury could find that appellant knew that the jewelry had been stolen, (2) that there was no direct evidence that appellant knew that the jewelry had been transported in interstate commerce or that he in fact caused its transportation. We disagree. Viewing the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we cannot say that the record was insufficient for a finding of guilty knowledge.[2] The attack against the sufficiency of the

---

1. Count III of the indictment alleged a conspiracy. Because the court granted appellant's motion for a directed verdict as to Count III, further discussion of Count III is unnecessary.

     18 U.S.C. § 2314 provides in pertinent part: Whoever transports in interstate . . . commerce any goods, wares, merchandise, . . . of the value of $5,000 or more, knowing the same to have been stolen,

     . . . . .

     Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. 18 U.S.C. § 2315 in relevant part provides: Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, . . . of the value of $5,000 or more, . . . moving as, or which are a part of, or which constitute interstate . . . commerce, knowing the same to have been stolen,

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. Knowledge of the involvement of interstate instrumentalities is not necessary for a conviction under 18 U.S.C. §§ 2314 and 2315. See *United States v. Ludwig,* 523 F.2d 705 (8th Cir. 1975); *United States v. Powers,* 437 F.2d 1160, 1161 (9th Cir. 1971); *United States v. Kierschke,* 315 F.2d 315, 318 (6th Cir. 1963). The fact that interstate commerce is involved is merely a jurisdictional prerequisite to the exercise of federal power. See *United States v. Ludwig,* supra at 707; *United States v. Roselli,* 432 F.2d 879, 891 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); see also *United States v. Denmon,* 483 F.2d 1093 (8th Cir. 1973).

evidence requires a review of the relevant facts.

One of the owners of an Indian jewelry store located in Cave Creek, Arizona, testified without contradiction that on August 25, 1974, a gunman entered the store. A short time later, the bandit was joined by another person and the two, at gunpoint, took all the merchandise in the store, which consisted primarily of Indian jewelry valued by the witness at approximately $200,000.

The scene shifted to Omaha, Nebraska, where on October 18, 1974, appellant, who was an Arizona resident at the time, contacted one Clark Addison, who had become acquainted with appellant at a race track in Phoenix, Arizona. Appellant showed a substantial number of pieces of Indian jewelry to Addison for the purpose of inducing him to purchase the lot. Although appellant stated that the jewelry was worth $40,000 to $50,000, he offered to sell it to Addison for $10,000.

From the outset, i. e., October 18, 1974, Addison expressed an interest in purchasing the jewelry, but was unable to personally finance the transaction. He contacted one Frank Chapman, who in turn met one Kenny Maskovitch. The three men, Addison, Chapman, and Maskovitch, examined the jewelry to ascertain its value. The jewelry was eventually purchased from appellant for $10,000.[3]

During the negotiations, F.B.I. agents working under cover and with assumed names obtained information from Addison and Chapman which led to their arrest and the arrest of appellant.

The Government's case consisted of the testimony of Mary Louise Rhoten, one of the owners of the store which had been robbed in the latter part of August. She positively identified the jewelry sold by appellant as part of the items taken in the holdup and placed a value of $26,000 on the jewelry, which was then admitted into evidence. Addison and Chapman, who had been granted immunity from prosecution, related the details of the several meetings of the aforementioned individuals. The two F.B.I. agents who worked on the case testified as to their participation in the investigation leading to the arrest of appellant. Appellant did not testify or attempt to explain his possession of the stolen jewelry.

◼ The court instructed the jury that "possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of supporting circumstances . . . that the person knew the property had been stolen." That this instruction correctly stated the law is not disputed. *See Lee v. United States,* 363 F.2d 469, 474 (8th Cir.), *cert. denied,* 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966). An instruction similar in substance to the one in question here was sanctioned as early as 1896 for use under appropriate facts and circumstances. *See Wilson v. United States,* 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896), *cited in Rugendorf v. United States,* 376 U.S. 528, 536–37, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Appellant argues, however, that there was no evidentiary basis for this instruction. The evidence shows that there was a span of nearly two months before Wilson first acquired possession of the stolen Indian jewelry. Appellant contends that two months, when considered with this type of merchandise, is too long for application of the principle that recent possession of

**3.** The record shows that Addison informed Chapman that the jewelry would cost $15,000, and that if he, Chapman, would put up $10,000, Addison would raise $5,000, which would leave him in debt to Chapman for $2,500. Addison's misrepresentation meant that he would have a share in the jewelry without having invested any amount. The record shows that Chapman raised the $10,000, which was paid to appellant.

stolen property gives rise to an inference of knowledge that the property is stolen.[4]

■ Among the paramount considerations in deciding whether this instruction has an adequate evidentiary basis are "the length of possession along with all the other facts and circumstances, * * * the type and kind of property, the amount or volume thereof, the ease or difficulty with which it may be assimilated into legitimate trade channels, including the circumstances under which the property is alleged to have been acquired."

*Teel v. United States,* 407 F.2d 604, 606–07 (8th Cir. 1969), *quoting from Aron v. United States,* 382 F.2d 965, 971 (8th Cir. 1967). *See also United States v. Liggins,* 451 F.2d 577 (8th Cir. 1971); *Wangrow v. United States,* 399 F.2d 106, 118 (8th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); *Cloud v. United States,* 361 F.2d 627, 629–30 (8th Cir. 1966). In *Lee v. United States, supra,* we held that possession of securities five months after they were stolen could give rise to an inference of guilty knowledge. Numerous cases in which the doctrine has been applied involve time periods ranging from two to fifteen months.[5] The owner of the Indian jewelry store testified at trial that all items with a value of $250 or more were engraved with the store identification number, which was registered with the Phoenix Police Department. On at least one item, this number was left intact. The store owner's initials "M.C." were engraved on a silver bracelet recovered from appellant's possession. Many of the other pieces were marred where the identification numbers had been

scratched or punched out. These facts tend to refute appellant's suggestion that this jewelry was easily marketable through legitimate channels. We hold that under these circumstances, a two month lapse was sufficiently recent to warrant an instruction on the permissible inference.

■ Consideration of other circumstances satisfies us that there was an adequate basis to sustain the jury's finding that appellant knowingly received stolen goods. First, appellant was an Arizona resident at the time of the theft; secondly, he agreed to sell the jewelry believed by him to have a value of forty to fifty thousand dollars for ten thousand dollars; thirdly, he informed an undercover F.B.I. agent that the jewelry would be "hot" on the West Coast, but "cool" in the East; and lastly, he discussed with an F.B.I. agent additional transactions involving diamonds with a value of twenty thousand dollars or more. It is well established that "[c]ircumstantial evidence is enough to sustain a finding of knowledge of the stolen character of . . . property." *United States v. Riso, supra* at 138.

## II

Alternatively, appellant contends that the court's failure to grant him access to all of the evidence submitted to the grand jury "denied his fourteenth amendment guarantee of due process." He claims that because such evidence was not provided to him he was unable to adequately prepare his defense to the charges. The record completely refutes appellant's claim of error.

The indictment was filed on November 15, 1974. On December 10, 1974, appel-

---

4. It is appellant's theory that Indian jewelry, because it is currently in demand, is easily marketed.

5. See, e. g., *United States v. Jacobs,* 475 F.2d 270, 281 (2d Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973) (2 months); *United States v. Riso,* 405 F.2d 134, 138 (7th Cir. 1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969) (15 months); *United States v. Allegrucci,* 299 F.2d 811 (3d Cir. 1962) (3 months); *United States v. DiCarlo,* 64 F.2d 15 (2d Cir. 1933) (3 months); *Boehm v. United States,* 271 F. 454 (2d Cir. 1921) (4 and 9 months).

lant's retained counsel moved for an order compelling the Government to furnish him with any evidence in its possession favorable to him and particularly copies of the transcripts of recordings made of conversations between appellant and third parties.

Thereafter, on December 18, 1974, the court permitted appellant's retained counsel to withdraw from the defense. Appellant consented to this action and insisted that he be permitted to represent himself. The district court granted appellant's request, but appointed an experienced attorney and directed the attorney to be present during the trial and to provide appellant ·with legal assistance.[6] On January 15, 1975, the court-appointed attorney filed a motion to suppress the transcript of a telephone conversation on November 6, 1974 between appellant and Clark Addison, a transcript of a conversation on November 1, 1974 between Frank Chapman, Clark Addison, and appellant, "and any other evidence, written or oral, of the aforementioned alleged conversations." On January 20, 1975, a hearing was held on the motion to suppress. At that time, court-appointed counsel informed the court that pursuant to the motion filed by retained counsel, the transcripts of the telephone conversations had been produced and "Mr. Wilson and I were allowed to listen to duplicates." Accordingly, court-appointed counsel suggested that the motion filed by him be denied. Appellant consented to this and the court overruled the motion to suppress.

■ We recognize, of course, that disclosure of grand jury proceedings may be necessary in some cases to enable the preparation of an adequate defense. In *Dennis v. United States,* 384 U.S. 855, 868–72, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1965), the Supreme Court stated that grand jury testimony should be disclosed upon a showing of a particularized need. There is no authority, however, "which requires a district judge to grant access to grand jury testimony of trial witnesses, absent a timely and proper request." *National Dairy Products Corp. v. United States,* 384 F.2d 457, 462 (8th Cir. 1967), cert. denied, 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968). We have searched the record for a request for a production of the grand jury testimony. At no time during the trial did court-appointed counsel or appellant mention the grand jury proceedings.[7] There is no contention that the grand jury testimony was used by the prosecution at trial. Moreover, nothing occurred that would have alerted the district judge to order the production of the grand jury testimony *sua sponte.*

We therefore hold that because appellant failed to request production of the grand jury testimony, or to demonstrate the existence of a particularized need for such evidence, he is in no position to complain of error.

Appellant stated at the conclusion of the trial that he had "received a fair trial." ·We fully agree and therefore affirm.

---

6. The record shows that court-appointed counsel was in fact present at trial and did assist appellant. At appellant's insistence, however, all direct and cross examination were conducted by him and appellant made the closing argument, for which the court allowed him forty-five minutes.

7. Although appellant acted pro se at trial, it is clear from the questions propounded by him and from the sentencing proceedings that he is not a novice insofar as court proceedings are concerned.