## No. 9459.

### KING *v.* THE PEOPLE.

CRIMINAL LAW—*Instructions Assuming Fact in Issue.* Prosecution for Larceny. The accused contended that the animal of which the larceny was charged was in fact his property. An instruction that, "possession of stolen property recently after the theft is sufficient to warrant a conviction," held error.

*Error to Prowers District Court, Hon. A. Watson McHendrie, Judge.*

Messrs. GORDON & GORDON, for plaintiff in error.

Hon. VICTOR E. KEYES, attorney general, and Mr. FORREST C. NORTHCUTT, assistant attorney general, for the people.

Opinion by Mr. Justice Allen:

THE plaintiff in error was convicted in the District Court of Prowers County upon trial, before a jury, under an information charging him with the larceny of one head of neat cattle, of the property of one J. E. Hinton. A motion for a new trial was overruled, and defendant was sentenced to an imprisonment in the penitentiary. He brings the cause here for review.

The plaintiff in error questions the sufficiency of the evidence to sustain the verdict. Relevant to this matter, the record discloses the following situation:

The alleged larceny, according to the information, was committed on March 28, 1918. The testimony of the prosecuting witness, J. E. Hinton, was to the effect, among other things, that the animal, alleged to have been stolen, was "one black steer, a yearling coming two years old," which he had purchased from one John Wilton on March 12, 1918; that he had taken the animal to his pasture, and on March 28th, "about noon," found it missing from his premises; and, that on the following day the defendant "came down" and asked the witness if he "had a black steer gone." The witness further testified as follows:

"He (the defendant) said he had (the steer) up in his barn and his brand was on it, wanted me to come up and look at the steer, and I and my brother-in-law went up to look at him.  *  *  *  He said that the calf was his; he had lost some up there,  *  *  *  and he had never found them.  *  *  *  He said that Wilton must have got his calf."

The witness next stated that the defendant retained possession of the calf on that occasion; that later, and during the same week, the witness returned to the defendant's place, and at that time Wilton, who was present, identified the calf as the one he had previously sold to the witness. The defendant, on this latter occasion, still claimed that the animal belonged to him, on this point the testimony being as follows:

"Mr. King (the defendant) said that was—that that was his brand on the calf and that I couldn't take it home with me; that brand would hold."

The prosecuting witness further testified that he and the defendant agreed to leave the matter of the ownership of the animal to arbitrators; that each of them chose one arbitrator; that the arbitrator chosen by the defendant "came over there," while the one named by the prosecuting witness did not come. The witness admitted that it was the defendant who first suggested the arbitration.

The defendant in his own behalf testified that he was the owner of the backward four quarter circle brand; that he had branded the animal in question on a wet rainy day in the spring of 1917; that he had at one time owned eight black steer calves, all of which had been produced by poll bull and horned cows; that one of these calves had been lost and that he believed the animal in question was the one which he had lost; that he first saw it on the 27th of March, 1918, coming up to his barn where he was feeding his horses; that the calf resembled the one which he had lost and he examined the animal to find out whether or not it had his brand on it; that he took the hair off the hide where he expected to find the brand and that he found what he thought was his brand on the animal.

There are several grounds upon which the plaintiff in error seeks a reversal of the judgment or conviction, but only one of these will now be considered, and the same relates to the trial court's instruction No. 8, which was given to the jury over the objections of the defendant. The instruction reads as follows:

"You are further instructed that the unexplained possession of property proven to have been recently stolen is a circumstance which a jury has a right to take into consideration as tending to show who probably stole the property. Possession of stolen property recently after the theft is sufficient to warrant a conviction, unless attending circumstances or other evidence so far overcomes the presumption thus raised as to create a reasonable doubt of the prisoner's guilt, when an acquittal should follow."

Assuming that no fault can be found with the abstract legal propositions laid down in this instruction, the giving of the instruction, in the instant case, was prejudicial error for the reason that the instruction assumes, in effect, that the property involved in the prosecution had been stolen. In the first sentence it is assumed that such property is "property proven to have been recently stolen," and in the second sentence it is assumed that the property had been "recently stolen." The facts thus assumed are controverted facts. As said in *Metz v. State,* 46 Nebr. 547, 554, 65 N. W. 190, "the accused, during the entire trial, strenuously insisted that such were not the facts, and it was prejudicial error for the court to assume as established the *corpus delicti.*" The defense, in the instant case, was that the property was not stolen. It was therefore error for the court to assume that it had been stolen. *Peterson v. People,* 65 Colo. 106, 173 Pac. 876; *Hix v. People,* 157 Ill. 382, 41 N. E. 862.

In 8 Enc. of Evidence 100, it is said that "it is error for the court in instructing the jury as to this presumption or inference (arising from the possession of stolen property) to assume the fact of larceny where it is controverted." Instructions similar to the one now being considered have

been held erroneous and prejudicial simply on the ground that where the only issue presented is whether the taking was or was not felonious, the instruction is unnecessary and apt to be misleading. *State v. Nave,* 201 S. W. 88, 91.

In the instant case the defendant claimed that the property was his own, and there was evidence to sustain his claim. Under these circumstances, the following language, in the opinion in *State v. Warden,* 94 Mo. 648, 651, 8 S. W. 233, is applicable:

"There was evidence tending to sustain this defense, and the only question for the jury to determine was whether the taking was with a felonious intent; whether the property was stolen or taken innocently, for the purpose stated, by mistake, as the defendant claimed. If the jury found that the property was stolen, the issue was decided. There was no necessity for any presumption in the case. The presumption is indulged under proper circumstances for the purpose of determining who took the stolen property, but has no place in a case where the only question is, was the property stolen. It bears upon the identity of the thief and not upon the question whether or not there is a thief in the transaction; upon the question of who took the property, and not upon the question of the intent with which it was taken, the only one before the jury for their determination in this case. The instruction was outside of the case—may have prejudiced the defense, and should not have been given."

The judgment is reversed and the cause remanded for new trial.

*Reversed.*

Chief Justice Garrigues and Mr. Justice Bailey concur.