## No. 27027

**The People of the State of Colorado v. Rene Lorio and Amador E. Nabor**

(546 P.2d 1254)

Decided March 15, 1976.

J. E. Losavio, Jr., District Attorney, William E. Maschal, Chief Deputy, Patricia W. Robb, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, James H. Frasher, Jr., Deputy; Kettlekamp and Vento, Kirk Brown, for defendants-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendants-appellees, Rene Lorio and Amador E. Nabor, were charged by information with aggravated robbery, section 18-4-302, C.R.S. 1973, and conspiracy, section 18-2-201, C.R.S. 1973. The charges were bound over to the district court where each of the defendants filed motions to suppress and motions to strike from consideration certain provisions of the robbery statute. After a hearing, the court granted the motions.

The issues before us are (1) whether the trial court erred in declaring a portion of the aggravated robbery statute unconstitutional; and (2) whether the trial court erred in granting the defendants' motions to suppress.

On March 6, 1975, shortly after midnight, Robert Cantrell, a Pueblo police officer, received a radio dispatch which reported that a robbery had just been committed at a 7-11 Store in Pueblo. He was given a description of the two male suspects involved, including information that one of the suspects was wearing a three-quarter length, purple, crushed velvet coat with white trim on the edges.

At approximately 3:00 a.m. the same morning, Cantrell was dispatched to the 1200 block of East Evans to investigate a hit-and-run accident. The victim of the accident related that two males driving a white-topped, blue-bottomed Dodge with a temporary license sticker had struck her car. The information given to Officer Cantrell was disseminated to law enforcement authorities, and shortly afterwards, a car matching the description of the vehicle involved in the hit-and-run accident was stopped on I-25 north of Pueblo by the Colorado State Patrol. Defendants Nabor and Lorio, who were in the car, were arrested, and the car was towed to M & M Towing Yard in Pueblo.

Officer Cantrell stated that after the defendants were arrested it occurred to him that the parties involved in the hit-and-run might also have been involved in the robbery at the 7-11 Store. He went to M & M Towing Yard to inspect the blue and white Dodge.

The officer shined a flashlight into the interior of the automobile and discovered what appeared to be a purple coat sticking out from underneath the front seat on the passenger side. Remembering that one of the parties in the 7-11 Store robbery had worn a three-quarter length crushed velvet coat, the officer unlocked and opened the car door and removed the coat, identifying it as a purple, crushed velvet, three-quarter length coat with a whitish-gray trim around the cuffs and collar. A report of this finding was filed at the police station.

Officer Max Atencio, who was investigating the 7-11 Store robbery, noticed Officer Cantrell's report and proceeded to M & M Towing Yard where he seized the coat, a small white sack with yellow stripes, and two one-dollar bills.

I.

Constitutionality of Aggravated Robbery Statute

█ The trial court ruled that subsection (2) of section 18-4-302, C.R.S. 1973, is unconstitutional because it relieves the prosecution of the burden of proving a necessary element of aggravated robbery — that the defendant was "armed with a deadly weapon" — and throws the burden upon the defendant to show that he was not so armed. We do not agree.

Section 18-4-302(2), C.R.S. 1973, provides, in pertinent part:
"(2) Possession of any article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence . . . that he was so armed."
In the first place, the statutory presumption created by this statute does not shift the entire burden of proof to the defendant, but merely the burden of going forward with respect to certain evidence. Such inferences or presumptions are not without precedent in this state. In *People v. McClendon*, 188 Colo. 140, 533 P.2d 923 (1975), we sustained an instruction which provided that "[t]he exclusive, unexplained possession of stolen

property recently after a burglary serves to create an inference or incriminating circumstance that the Defendant stole such evidence . . . ."
Absent explanation by the defendant, we held that this evidence alone would support a guilty verdict if proven beyond a reasonable doubt. *People v. McClendon, supra.*

The test for determining whether such a presumption is constitutional was stated in *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), where the Supreme Court concluded that if the evidence required to invoke the inference was "sufficient for a rational juror to find the inferred fact beyond a reasonable doubt," and if the "presumed fact is more likely than not [based on common sense and experience] to flow from the proved fact on which it is made to depend," then due process standards are satisfied. *Accord, Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

The presumption created by the statute meets the test described by the United States Supreme Court. The statute permits the jury to infer that the defendant actually possessed a deadly weapon when he has made such a representation to another. In the light of common sense and experience, the victim of a robbery — possessed of reasonable belief — may infer that a defendant possesses a deadly weapon if the defendant makes such a representation. Certainly, nobody would require the victim to test this inference. The jury, guided by the light of reason, is permitted, under the statute, to draw the same inference, and the inference may be used to support a finding of guilt under the statute. *See generally, People v. McClendon, supra.*

Furthermore, the presumption created by the robbery statute does not violate a defendant's constitutional right against self-incrimination. "Although the presumption requires a defendant to rebut the permissible inference which the rational juror may draw, the defendant is not forced thereby to take the witness stand, but may, without adverse consequences rely instead on evidence independent of his own testimony." *People v. McClendon, supra. See also* Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases*, 79 Yale L.J. 165 (1969); Comment, *Due Process Requirements for Use of Non-Statutory Inferences in Criminal Cases*, 1973 Wash. U. L. Q. 897; Comment, *Statutory Criminal Presumptions; Reconciling the Practical With the Sacrosanct*, 18 U.C.L.A. L. Rev. 157 (1970); Note, *The Unconstitutionality of Statutory Criminal Presumptions*, 22 Stan. L. Rev. 341 (1970).

The defendants' and lower court's reliance on the cases of *Moore v. People*, 124 Colo. 197, 235 P.2d 798 (1951), and *People v. Vinnola*, 177

Colo. 405, 494 P.2d 826 (1972), is misplaced. In our opinion, the presumed facts at issue in those cases did not naturally and reasonably flow from the proven facts, and, therefore, the presumptions could not stand. That is not the case here, where we are able at least to state "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States, supra.*

■ A statute is presumed constitutional, and those who challenge the constitutionality of a statute must prove its invalidity beyond a reasonable doubt. *See People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973); *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972); *People v. Small,* 177 Colo. 118, 493 P.2d 15 (1972). Clearly, the intent of the legislature in passing section 18-4-302(2), C.R.S. 1973, was to prevent armed robbers from escaping aggravated robbery charges by simply concealing deadly weapons in their pockets or under other wraps or devices. Recognizing this legislative intent causes us to uphold the constitutionality of the statute. *People v. Sneed, supra; People v. Lee,* 180 Colo. 376, 506 P.2d 136 (1973). We have previously sustained the constitutionality of this statute as challenged upon other grounds. *See People v. Duran,* 188 Colo. 207, 533 P.2d 1116 (1975).

## II.
## Search and Seizure

■ The prosecution contends that the search of the automobile by the police officers was constitutionally permissible under the "automobile exception" to the Fourth Amendment. We initially observe that warrantless searches are presumptively illegal under both the United States Constitution and the Constitution and laws of the State of Colorado, and that the prosecution must bear the burden of proving an exemption from the warrant requirements. *People v. Neyra,* 189 Colo. 367, 540 P.2d 1077 (1975); *People v. Railey,* 178 Colo. 297, 496 P.2d 1047 (1972).

■ In this case, the defendants were under arrest; the defendants' automobile was in police custody; no danger existed that any evidence in the car would be removed or destroyed before a warrant could be secured; in short, no exigent circumstances existed. Thus, even if the evidence was in plain view, the police officers had time to secure a search warrant, and their failure to do so stripped them of lawful authority to enter the vehicle and seize the contested evidence.

Accordingly, we reverse the trial court's ruling on the constitutionality of the robbery statute and affirm the ruling of the trial court on the suppression of evidence. We remand the within case for trial on the merits.

MR. JUSTICE KELLEY dissents as to Point II.